UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DUANE E. MCNICHOL<br><br>Plaintiff,<br><br>v.<br><br>AURORA BANK, FSB, and EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendants. | CIVIL ACTION<br><br>COMPLAINT 1:18-cv-08351<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

**NOW COMES** the Plaintiff, DUANE E. MCNICHOL ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd., complaining of the Defendants, AURORA BANK, FSB ("Aurora") and EQUIFAX INFORMATION SERVICES, LLC, ("Equifax" and collectively "Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendant's violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681 et seq.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the FCRA, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff resides in this District and all of the events or omissions giving rise to the claims occurred in this District.

1

## PARTIES

4. Plaintiff Duane E. McNichol is a consumer and a natural person over 18-years-of-age who, at all times relevant, owned the property located at 18021 Thomas Lane, Country Club Hills, IL 60478 ("subject property").

5. Aurora is a corporation doing business in the State of Illinois.

6. Aurora is a furnisher of information as contemplated by 15 U.S.C. §1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

7. Equifax is a corporation incorporated in the state of Georgia, is authorized to do business in the State of Illinois, and is registered with the Illinois Secretary of State. It has a registered agent located in Illinois.

8. Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis," as defined by 15 U.S.C. §1681a(p).

9. Equifax is regularly engaged in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

## BANKRUPTCY CASE

10. In March 2007, Plaintiff executed a mortgage and note in the amount of approximately $116,000.00 ("subject loan," or "subject debt"), secured by the subject property.

11. Subsequently, Aurora acquired the servicing rights to the subject debt.

12. Sometime thereafter, Nationstar Mortgage, LLC ("Nationstar") acquired the servicing rights to the subject debt.

13. On September 27, 2016, Plaintiff filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 16-30781 ("bankruptcy").

14. Schedule D of the bankruptcy petition listed the subject loan, owed to Nationstar, in the amount of $107,852.00, secured by the subject property.

15. Also on September 27, 2016, Plaintiff filed his Original Chapter 13 Plan ("Original Plan").

16. On September 30, 2016, by virtue of listing Nationstar as a creditor, the Bankruptcy Noticing Center ("BNC") served Nationstar with notice of Plaintiff's bankruptcy filing and Plaintiff's Original Plan.

17. On February 9, 2017, Plaintiff filed a Modified Chapter 13 Plan ("Modified Plan").

18. Plaintiff's Modified Plan proposed to treat Nationstar's claim as follows:

> "Debtor is surrendering the real property located at 18021 Thomas Lane, Country Club Hills, IL 60478 to Nationstar Mortgage LLC and U.S. Bank National Association, as Trustee, successor in interest to LaSalle Bank National Association, as Trustee for LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-10H, in full satisfaction of its secured claims."

19. On February 24, 2017, Plaintiff's Modified Plan was confirmed by the Honorable Judge Janet S. Baer.

20. Plaintiff fully performed his duties and made all payments as was required under the terms of his confirmed Chapter 13 Plan.[1]

21. On January 31, 2018, the Bankruptcy Court entered an Order of Discharge in Plaintiff's case of all dischargeable debts, including the subject debt.

22. The Order of Discharge expressly states:

---

[1] A confirmed plan constitutes a new contract between the debtor and creditors and a creditor's rights are defined by the confirmed plan. Consequently, a pre-petition claim provided for in a confirmed plan is no longer a pre-petition claim. Thus, any scheduled payments are governed by the confirmed plan and are made directly to the bankruptcy trustee for distribution to creditors.

> "This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts....."

23. On February 2, 2018, the BNC served Nationstar with the Order of Discharge.[2]

24. Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect upon the subject debt by Nationstar or any other party, including Aurora.

25. On February 15, 2018, Plaintiff's bankruptcy case closed and the Trustee was discharged.

26. Plaintiff's personal liability on the subject loan was extinguished via his bankruptcy discharge, thus terminating the business relationship with Nationstar and any of its predecessors, successors and assigns, such as Aurora.

### CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTE TO EQUIFAX

27. After receiving his bankruptcy discharge, Plaintiff pulled his Equifax credit report to make sure all creditors were reporting accurately. Plaintiff discovered that Equifax and Aurora were reporting the subject loan with a high scheduled monthly payment amount and without a discharged status.[3]

28. The reporting of the subject loan was patently inaccurate, incomplete, and materially misleading because the subject loan was discharged in Plaintiff's bankruptcy and should not have been reporting a "Scheduled Payment Amount" of greater than $0 and should have been reporting that the subject loan was discharged in Plaintiff's bankruptcy.[4]

---

[2] At no time did Nationstar file any proceedings to declare the subject debt as "non-dischargeable" pursuant to 11 U.S.C. §523 *et seq*.

[3] To help furnishers comply with their requirements under the FCRA, the Consumer Data Industry Association ("CDIA"), in cooperation with the Credit Reporting Agencies, publishes a Credit Reporting Resource Guide for reporting data called the "Metro 2 Format."

[4] Pursuant to the CDIA guidelines, a Chapter 13 bankruptcy, once completed and discharged, should be reported as "Discharged through BK Chapter 13," a "Current Balance" of Zero, a "Scheduled Monthly Payment Amount" of Zero, and an "Amount Past Due" of Zero. *See* 2013 CDIA Manual; page 6-21.

a. **Plaintiff's Dispute Letter to Equifax**

29. On April 5, 2018, Plaintiff sent a detailed dispute letter to Equifax requesting that his credit report be updated to reflect a zero monthly payment and the discharged status of all accounts included in his bankruptcy. Plaintiff also specifically disputed the Aurora trade line.

30. Among other items, Plaintiff's dispute letter stated the following: "I also wanted to dispute…Aurora Bank closed date July 1, 2012 (this account was paid and closed and the monthly payment should say zero)."

31. Upon information and belief, Aurora received notice of Plaintiff's dispute letter and all enclosed supporting documents from Equifax within five days of Equifax receiving Plaintiff's dispute letter. *See* 15 U.S. Code §1681i(a)(2).[5]

b. **Equifax's Response to Plaintiff's Dispute Letter**

32. On May 9, 2018, Equifax responded to Plaintiff's dispute letter by failing to correct the inaccuracies of the Aurora account to accurately reflect a $0 "Scheduled Payment Amount" as it was required to do following Plaintiff's bankruptcy discharge on January 31, 2018.[6] Instead it reported a "Scheduled Payment Amount" of $1,635.

33. Specifically, Equifax's response reported the subject loan as follows:

| Aurora Bank, FSB | 601 5th Ave Scottsbluff NE 69361-3581 ; (308) 635-3500 | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | | Months Revd | Activity Designator | | Creditor Classification | | |
| 364004037* | 03/30/2007 | $115,900 | | 30 Years | Monthly | | 60 | Transfer/Sold | | | | |
| Items As of Date Reported | Balance Amount | Amount Past Due | Date of Last Paymnt | Actual Pymnt Amount | Scheduled Paymnt Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
| 07/05/2012 | $0 | | 06/2012 | $1,634 | $1,635 | | 06/2012 | | | | | | 07/2012 |
| Status - Pays As Agreed; Type of Account - Mortgage; Type of Loan - Conventional Re Mortgage; Whose Account - Individual Account; ADDITIONAL INFORMATION - Account Transferred or Sold; Real Estate Mortgage; Variable/Adjustable Rate; | | | | | | | | | | | | |
| Account History with Status Codes | 12/2011 2 | 11/2011 1 | | | | | | | | | | |

---

[5] Plaintiff attached his bankruptcy discharge order, driver's license, and social security card to his dispute letter.
[6] Pursuant to the CDIA guidelines, a Chapter 13 bankruptcy, once completed and discharged, should be reported as "Discharged through BK Chapter 13," and a "Scheduled Monthly Payment Amount" of Zero. *See* 2013 CDIA Manual; page 6-21.

5

34. The reporting of the Aurora trade line is patently inaccurate, incomplete, and creates a materially misleading impression that Plaintiff is still personally responsible for, and obligated to pay a monthly payment amount. However, Plaintiff is no longer personally liable on the subject loan as Plaintiff's Chapter 13 bankruptcy was discharged on January 31, 2018.

35. Moreover, Equifax and Aurora failed to report the Aurora trade line as discharged in bankruptcy and failed to report that he is disputing the reporting of the subject loan.

### IMPACT OF CONTINUING INACCURATE REPORTING ON PLAINTIFF'S CREDIT FILES

36. The erroneous reporting of the Aurora account paints a false and damaging image of Plaintiff. After it was provided notice by Plaintiff and Equifax, Equifax did not update the Aurora trade line to accurately reflect the discharged status of the subject loan.

37. The entire experience has imposed upon Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff helpless as to his ability to regain a firm foothold on his creditworthiness, credit standing, credit capacity, and his ability to move forward after his bankruptcy discharge.

38. The inaccurate reporting of subject loan had significant adverse effects on Plaintiff's credit rating because it created a false impression that Plaintiff was still personally liable and obligated to pay on the subject loan, rendering Plaintiff a high-risk consumer and damaging his creditworthiness.

39. On September 16, 2018, in an effort to remedy the continued inaccurate and incomplete reporting of the subject loan and to validate the accuracy of Defendants' credit reporting, Plaintiff purchased an Equifax 3-Bureau Credit Report and Score for $39.95.

40. The Equifax 3-Bureau Credit Report revealed that Aurora and Equifax were still inaccurately reporting the subject loan as delinquent, and indicated that Plaintiff is still personally

responsible for a scheduled monthly payment. Moreover, Aurora, and Equifax failed to report the subject loan as discharged in bankruptcy.

41. Plaintiff suffered monetary damages he otherwise would not have incurred had Defendants ceased or corrected the inaccurate and incomplete reporting of the subject loan after Plaintiff's disputes.

42. As a result of the conduct, actions, and inaction of Defendants, Plaintiff has suffered various types of damages as set forth herein, including specifically, out-of-pocket expenses, the loss of credit, the loss of ability to purchase and benefit from a credit line, and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with his attorneys, tracking the status of his disputes, monitoring his credit file, and mental and emotional pain and suffering.

43. Due to the conduct of the Defendants, Plaintiff was forced to retain counsel to force compliance with the Fair Credit Reporting Act.

<u>COUNT I - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT</u>
(AGAINST AURORA)

44. Plaintiff restates and reallages paragraphs 1 through 43 as though fully set forth herein.

45. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(b) and (c).

46. Aurora is a "person" as defined by 15 U.S.C. §1681a(b).

47. Aurora is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

48. At all times relevant, the above mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

49. Aurora violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving requests for an investigation from Equifax, and Plaintiff.

50. Aurora violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information, namely Plaintiff's discharge order, provided by Plaintiff, and Equifax pursuant to 15 U.S.C. §1681i(a)(2).

51. Had Aurora reviewed the information provided by Plaintiff, and Equifax, it would have corrected the inaccurate designation of the subject loan, transmitting the correct information to Equifax. Instead, Aurora wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

52. Aurora violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of the investigation of Plaintiff's dispute with Equifax.

53. Aurora violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation to Equifax after being put on notice and discovering inaccurate and misleading reporting with respect to the subject loan and Plaintiff.

54. Aurora violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information on Plaintiff's credit files.

55. Aurora failed to conduct a reasonable investigation of its reporting of the subject loan, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit file within 30 days of receiving notice of a dispute from Equifax under 15 U.S.C. §1681i(a)(1).

56. Despite the blatantly obvious error on Plaintiff's credit file, and Plaintiff's efforts to correct the error, Aurora did not correct the errors or trade line to report accurately and completely.

Instead, Aurora wrongfully furnished and reported the inaccurate, incomplete, and misleading information after Plaintiff's dispute to one or more third parties.

57. A reasonable investigation by Aurora would have confirmed the veracity of Plaintiff's dispute, yet the inaccurate information continues to be reported on Plaintiff's credit file.

58. Had Aurora taken steps to investigate Plaintiff's valid dispute or Equifax's request for investigation, it would have permanently corrected the erroneous and misleading credit reporting. Plaintiff provided all relevant information in his request for investigation. Furthermore, Plaintiff's bankruptcy information is public record that is widely available and easily accessible.

59. By deviating from the standards established by the mortgage servicing industry and the FCRA, Aurora acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax.

**WHEREFORE,** Plaintiff DUANE E. MCNICHOL respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Order the deletion or modification of all adverse credit reporting relating to the subject loan;
c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;
e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;
f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and
g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT II - VIOLATION OF THE FAIR CREDIT REPORTING ACT
(AGAINST EQUIFAX)

60. Plaintiff restates and realleges paragraphs 1 through 59 as though fully set forth herein.

61. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

62. Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

63. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

64. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

65. Plaintiff provided Equifax with all relevant information and documentation in his request for investigation to reflect his bankruptcy discharge and that he is no longer personally liable for the subject loan.

66. Equifax prepared Plaintiff's credit reports containing inaccurate and materially misleading information by reporting the subject loan with a monthly payment amount, when in fact Plaintiff had received a bankruptcy discharge, and owed no monthly payment amount on the subject loan.

10

67. A simple review of the relevant documents submitted by Plaintiff would have confirmed that Plaintiff had filed and was discharged in bankruptcy and did not have a monthly payment amount owed or scheduled.

68. Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiff. On numerous occasions, Equifax has prepared a patently false and a materially misleading consumer report concerning Plaintiff. Equifax had actual knowledge of Plaintiff's bankruptcy discharge after Plaintiff included his bankruptcy discharge order attached to his dispute letter on April 5, 2018.[7]

69. Equifax violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information on Plaintiff's credit files.

70. Had Equifax taken any steps to investigate Plaintiff's valid dispute, it would have determined that subject loan and other debts were discharged in Plaintiff's bankruptcy on January 31, 2018.

71. Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiff's dispute to Aurora. Upon information and belief, Equifax also failed to include all relevant information as part of the notice to Aurora regarding Plaintiff's dispute that Equifax received from the Plaintiff.

72. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff and Aurora with regard to the subject loan.

---

[7] In compliance with FCRA section 1681i(5)(D), Equifax must implement an automated system through which furnishers of information to Equifax may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file to other such consumer reporting agencies. This system, called e-OSCAR-web, is available for use by all data furnishers.

73. Equifax violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the inaccurate information that was the subject of Plaintiff's dispute.

74. After Plaintiff's written detailed dispute, Equifax had specific information related to Plaintiff's bankruptcy case, and subsequent discharge order, which included the subject loan.

75. Equifax knew that the inaccurate designation of the subject loan on Plaintiff's credit file under the Aurora trade line having a scheduled monthly payment after his bankruptcy discharge would have a significant adverse effect on Plaintiff's credit worthiness and ability to receive a "fresh start" after completing his bankruptcy.

76. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

77. Despite actual knowledge that Plaintiff's credit file was erroneous, Equifax readily sold Plaintiff's inaccurate and misleading report to one or more third parties, thereby misrepresenting Plaintiff and, ultimately, Plaintiff's creditworthiness.

78. By deviating from the standards established by the credit reporting industry and the FCRA, Equifax acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

79. It is Equifax's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

80. Equifax's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's credit file and reporting his credit information.

81. Equifax acted reprehensively and carelessly by reporting Plaintiff owing a scheduled payment amount on the subject loan after Plaintiff was discharged in bankruptcy.

82. Upon information and belief, Equifax has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data on consumers.

83. As stated above, Plaintiff was severely harmed by Equifax's conduct.

**WHEREFORE**, Plaintiff DUANE E. MCNICHOL respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Order the deletion of all adverse credit reporting;
c. Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;
d. Award each Plaintiff statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and
g. Award any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: December 20, 2018　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　/s/ Alexander J. Taylor
　　　　　　　　　　　　　　　　　　　　/s/ Marwan R. Daher
　　　　　　　　　　　　　　　　　　　　/s/ Omar T. Sulaiman
　　　　　　　　　　　　　　　　　　　　Alexander J. Taylor, Esq.
　　　　　　　　　　　　　　　　　　　　Marwan R. Daher, Esq.
　　　　　　　　　　　　　　　　　　　　Omar T. Sulaiman, Esq.
　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*
　　　　　　　　　　　　　　　　　　　　Sulaiman Law Group, Ltd
　　　　　　　　　　　　　　　　　　　　2500 S Highland Ave, Suite 200
　　　　　　　　　　　　　　　　　　　　Lombard, IL 60148
　　　　　　　　　　　　　　　　　　　　Telephone: (630) 575-8181
　　　　　　　　　　　　　　　　　　　　ataylor@sulaimanlaw.com
　　　　　　　　　　　　　　　　　　　　mdaher@sulaimanlaw.com
　　　　　　　　　　　　　　　　　　　　osulaiman@sulaimanlaw.com